| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK<br>(CENTRAL ISLIP) | Hearing Date:<br>Hearing Time: |

------------------------------------------------------------X
In re:                                                                    Chapter 13
                                                                              Case No. 8-16-74079-reg
CELESTINE WENEGIEME,

                                            Debtor.
------------------------------------------------------------X

**APPLICATION IN SUPPORT OF MOTION FOR AN ORDER
DISMISSING THE CHAPTER 13 CASE FOR CAUSE, PURSUANT
TO 11 U.S.C. § 1307(c), OR, IN THE ALTERNATIVE, FOR AN ORDER
ANNULING OR TERMINATING THE AUTOMATIC STAY, *NUNC PRO TUNC*,
TO THE DATE OF FILING, PURSUANT TO 11 U.S.C. §§ 362(d)(1)**

**TO THE HON. ROBERT E. GROSSMAN – U.S. BANKRUPTCY JUDGE:**

Goldstein Group Holding ("Goldstein Group"), by its attorney, Elizabeth A. Haas, Esq., PLLC, in support of its application for an Order dismissing the encaptioned Chapter 13 case for cause, pursuant to 11 U.S.C. § 1307(c), or, in the alternative, for an Order annulling or terminating the automatic stay, *nunc pro tunc* to the date of filing, pursuant to 11 U.S.C. § 362(d)(1), respectfully shows and represents:

1. Celestine Wenegieme ("Celestine") filed a Chapter 13 petition with this Court on September 6, 2016 (the "Current Filing"). As will be set forth hereinbelow, this Current Filing is a series of filings by Celestine and other family members including Celeste Wenegieme ("Celeste") and Alleyne Sylvester ("Sylvester") filed over the past five years in the District of Maryland (Baltimore), the Southern District of New York, and in this District.

2. Celestine is currently the owner of a piece of property located at 215 West 134th Street, New York, New York 10030 (the "Property"). Goldstein Group, as the holder of a

mortgage encumbering the Property, is attempting to enforce its rights against the Property as elaborated herein.

3. The underlying dispute relates to Property which over the years Celeste, Celestine and Sylvester transferred among themselves.

4. A search of the public records reflects that Celestine was not the original owner of the Property.

5. On June 18, 2004, Sylvester acquired title to the Property by deed recorded on March 3, 2005. A copy of the deed is annexed hereto as Exhibit "A".

6. At the same time Sylvester acquired title to the Property, she entered into a note with Interbay Funding, LLC ("Interbay") and mortgage dated January 18, 2005, and recorded on March 3, 2005, which was simultaneously executed in the sum of $476,000.00. A copy of the mortgage is annexed hereto as Exhibit "B" (the "Interbay Loan Documents").

7. The Interbay Loan Documents were assigned to Bayview Loan Servicing, LLC ("Bayview") on August 19, 2005 (the "Bayview Assignment"). A copy of the Bayview Assignment is annexed hereto as Exhibit "C".

8. Thereafter Bayview assigned the underlying note and mortgage to Goldstein Group. A copy of the assignment of the mortgage and the underlying note and related allonges to Goldstein Group is annexed hereto as Exhibit "D" (the "Goldstein Assignment").

9. The Interbay Loan Documents, the Bayview Assignment and the Goldstein Assignment are collectively referred to as the "Loan Documents."

10. The obligation under the Loan Documents fell into default by Sylvester who failed to pay the obligation due in November of 2010. No payment has been received since then. As a result of the default, Bayview commenced a foreclosure action in the New York

State Court encaptioned, *Bayview Loan Servicing, LLC v. Alleyne Sylvester, et al.*, Index No. 810056/11 (the "Foreclosure Action")

11. However, prior to the default and the commencement of the State Court Foreclosure Action, Sylvester transferred title to the Property to Celeste by deed dated June 6, 2005, and recorded on August 24, 2005. The real estate transfer tax form states no consideration was paid for the transfer and that it was "a sale between relatives." A copy of the deed and transfer tax form is annexed hereto as Exhibit "E". Despite the transfer of title, the obligation under the Loan Documents were not satisfied and continue as a lien against the Property.

12. After the Foreclosure Action was commenced, Celeste transferred the Property to Celestine by deed dated October 1, 2012, and recorded on February 6, 2013. The real estate transfer tax application indicated that the sale price was zero. A copy of the deed and transfer tax form is annexed hereto as Exhibit "F". Again, the original obligation of Sylvester under the Loan Documents was not satisfied.

13. In the Foreclosure Action, after extensive litigation, a Judgment of Foreclosure and Sale was entered on June 14, 2016, and filed on August 2, 2016. A copy of the Judgment of Foreclosure and Sale is annexed hereto as Exhibit "G". Goldstein Group, as the assignee of Bayview, then scheduled a foreclosure sale for September 7, 2016 (the "Foreclosure Sale").

14. The Current Filing relates to a Chapter 13 case filed by Celeste in the Southern District of New York (16-12354-jlg) (Celeste's Current Filing") on August 15, 2016. In Celeste's Current Filing, there was a ruling by the Hon. James L. Garrity, Jr. terminating the automatic stay to permit Goldstein Group to proceed with a foreclosure sale of the Property

on September 7, 2016 (Doc. 20) (the "Foreclosure Sale"), a copy of this Order is annexed hereto as Exhibit "H".

15. Simultaneously with Celeste's Current Filing and the ruling from Judge Garrity, Jr. (Exhibit "H"), Celestine and Celeste brought an application to enjoin the Foreclosure Sale in the Foreclosure Action. That motion, which was returnable on September 6, 2016, was denied. A copy of the Decision and Order entered on September 6, 2016, is annexed hereto as Exhibit "I".

16. Additionally, prior to the entry of the Judgment of Foreclosure and Sale (Exhibit "G"), Sylvester and Celeste brought an action in the U.S. District Court, Southern District of New York, encaptioned, *Alleyne Sylvester and Celeste Wenegieme v. Bayview Loan Servicing, LLC, et al.,* 15 CV 01736 (JPO) (the "District Court Action"), where they sought to enjoin the entry of the Judgment of Foreclosure and Sale, which was denied (*see* Doc. 20 at pg. 11, a copy of which is annexed hereto as Exhibit "J").

17. Notwithstanding the ruling of Judge Garrity, Jr. in Celeste's Current Filing and the denial of the request to enjoin the sale in the Foreclosure Action in the State Court, Celeste then sought an emergency ruling in the District Court Action to enjoin the Foreclosure Sale; that request was also denied (a copy of the District Court Order is annexed hereto as Exhibit "K").

18. Notwithstanding the three failed attempts in less than a week to enjoin the Foreclosure Sale, Celestine's Current Filing at 4:30 p.m. on September 6, 2016, was a blatant attempt at forum shopping, was filed in bad faith, and justifies an immediate dismissal of this case pursuant to 11 U.S.C. § 1307(c).

4

19. In the Current Filing, in an obvious attempt to mislead the Court, Celestine misrepresented the facts in her statement pursuant to Local Bankruptcy Rule 1073-2(b) that "No related case is pending or has been pending at any time" (Doc. 1, pg. 9). Nothing could be further from the truth.

20. Celestine and Celeste, who are believed to be son and mother, and Alleyne Sylvester ("Sylvester"), believed to be a relative, have a long history of filing bankruptcies in this District, in the Southern District of New York, and in Maryland. Annexed hereto as Exhibit "L" is a summary of the prior case filings among these family members. This Court's attention is also directed to the addresses used in the filings which further supports an appearance of bad faith representation filings.

21. Although it is uncertain if the other filings prior to Celeste's Current Filing and the Current Filing were intended to enjoin the sale of the Property, it is obvious that the prior filings would have the effect of delaying the State Court Foreclosure Action which commenced in 2011.

22. Following the adverse rulings in Celeste's Current Filing[1], in the State Court and District Court, Celestine filed this case and, through Celeste, took the position at the Foreclosure Sale that there was a bankruptcy stay. Because there were competitive bidders at the sale, it was agreed that the sale would go forward subject to a ruling of this Court or the Court.

23. At the time Celestine filed this proceeding, the only scheduled creditor was Bayview which Celestine knew, or should have known, had been assigned to Goldstein

---

[1] Celeste and Celestine have a history of appearing *pro se* and asking for time to obtain counsel. Indeed, in Celeste's Current Filing, this request was made and denied (*see* Memo Endorsement of Judge Garrity, Jr., a copy of which is annexed hereto as Exhibit "M").

Group, as Celestine was served with a complete set of the pleadings filed by Goldstein Group in Celeste's Current Filing as evidenced by the Affidavits of Service in that case which are annexed hereto as Exhibit "N" (Doc. 13-18, 14, 15-4).[2]

24. In addition to the obvious abuse of the bankruptcy process, there is also a practical consideration for this Court.

25. As indicated at a hearing in Celeste's Current Filing held on September 1, 2016, Judge Garrity, Jr. granted Goldstein Group's application to terminate the stay to permit the Foreclosure Action to proceed. The Order (Exhibit "H") provides that any surplus proceeds should be delivered to the Chapter 13 Trustee.

26. As noted, the Foreclosure Sale was scheduled for September 7, 2016, and the parties went forward subject to a ruling of this Court. There was a third party bidder who offered more than the outstanding obligation to Goldstein Group. A copy of the Referee's Report of Sale is annexed hereto as Exhibit "O".

27. There also appears to be other creditors with liens against the Property as evidenced by housing and building violation searches, a copy of which is annexed hereto as Exhibit "P", and other municipal liens against the Property, a copy of which is annexed hereto as Exhibit "Q". If the case is dismissed and the foreclosure sale finalized, there may be a corpus of funds to pay other creditors with liens against the Property through Celeste's Current Filing.

28. This Court has authority to dismiss the Current Filing for cause. Section 1307(c) of the U.S. Bankruptcy Code (11 U.S.C. § 101 *et seq.*) (the "Code") enumerates eleven nonexclusive grounds which constitute cause for dismissal. The cases are legion that

---

[2] It appears that Celestine has now amended her petition to include Goldstein Group and other creditors (Doc. 5). Schedules are still not filed, although the time to do so has not expired.

even though the enumerated grounds do not specifically include a bad faith filing, bad faith is cause for dismissal. See, In re Ellsworth, 455 B.R. 904 U.S. Bankr. App. Panel 9th Cir. 2011 and cases cited therein.

29.     As noted in Ellsworth, supra., the Bankruptcy Court must review "the totality of the circumstances to determine if a petition was filed in bad faith. . ." and relying on Leavitt v. Soto (In re Leavitt), 171 F.3d 1219 (9th Cir. 1999 (Leavitt I)), the Ellsworth Court, supra., noted when considering dismissal of a Chapter 13 case due to bad faith, a bankruptcy court should consider:

> "(1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the code, or otherwise filed his petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor intended to defeat State Court litigation; and (4) whether egregious behavior is present" (citation omitted).

See, In re Ellsworth, supra. at 917-918.

30.     Although when Leavitt I was decided, there was no statutory requirement that a Chapter 13 case be filed in good faith, the present requirement can now be found in § 1325(a)(7) added as part of the 2005 amendments to the Code.

31.     Additionally, as elaborated by Judge Gropper in In re Wallace, 2014 W.L. 4248431 S.D.N.Y. 2014:

> "Under 11 U.S.C. § 1307(c) a court may dismiss a case "for cause." "[A]lthough 11 U.S.C. 1307(c) does not expressly equate bad faith with 'cause,' the bankruptcy court can also dismiss the petition or convert the case under section 1307(c) if the debtor files his petition in bad faith." In re Eatman, 182 B.R. 386, 392 (Bankr. S.D.N.Y. 1995). As the Court said in that case, "Bad faith has both an objective and subjective element; the proponent of bad faith must show 'both objective evidence of a fundamentally unfair result and subjective evidence that a debtor filed a petition for a fundamentally unfair purpose that was not in line with the

spirit of the Bankruptcy Code.'" *In re Eatman,* 182 B.R. at 392, quoting *In re Love,* 957 F.2d 1350, 1357 (7th Cir. 1992).

*In re Wallace, supra.* at 4.

32. Although Judge Gropper in the *Wallace* case, *supra.,* ultimately held that the movant in that case did not offer "objective evidence of a fundamentally unfair result or subjective evidence that the debtor filed a petition for a fundamentally unfair purpose that is not in line with the spirit of the bankruptcy code" (*In re Wallace, supra.,* at 5), the facts of this case support a dismissal especially when considering the analysis of *Leavitt I* as cited in *In re Ellsworth, supra.,* at 917-918.

33. Celestine misrepresented facts in his petition by failing to disclose the related case of Celeste's Current Filing or the twelve prior bankruptcy filings (Exhibit "L"). Celestine and Celeste made three attempts in the days before the Foreclosure Sale to enjoin the sale and lost in each venue. Now, with the Current Filing, he seeks to manipulate the Code in an inequitable manner to stop the Foreclosure Sale. Moreover, the Debtor's and Celeste's numerous bankruptcy filings (Exhibit "L") further support Goldstein Group's allegations that the Debtor is intending to defeat State Court litigation, without any real likelihood of effective reorganization.

34. Considering the totality of the facts behind this case, this Court should find bad faith and dismiss this Chapter 13 case, pursuant to 11 U.S.C. § 1307(c).

35. Alternatively, Goldstein Group seeks an Order annulling or terminating the automatic stay, *nunc pro tunc,* to the date of filing in order to permit the foreclosure sale to be consummated.

36. Section 362 of the Bankruptcy Code provides, in pertinent part:

8

> "(d) on request of a party in interest and after notice, and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning any stay –
> 1.   for cause . . ."

37.   "Cause" is not defined in the Bankruptcy Code, but courts have interpreted the phrase as a broad and flexible concept that is determined on a case-by-case basis. *See, In re Sonnax Indus., Inc.,* 907 F.2d 1280, 1285-86 (2d Cir. 1990); *In re Fitzgerald,* 237 B.R. 252, 259 (Bankr. D. Conn. 1999); *In re M.J. & K. Co., Inc.,* 161 B.R. 586, 590 (Bankr. S.D.N.Y. 1993). The Bankruptcy Court exercises its discretion when determining whether "cause" exists to lift the stay. *Id.* In determining whether cause exists for granting relief from the automatic stay, the Court should balance the interests of the movant in receiving relief from the automatic stay against the interests of the debtor in continuing to receive the stay's protection. *Sonnax Indus., Inc. v. Tri Component Products Corp., (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1285 (2d Cir. 1990); *In re Colin,* 35 B.R. 904, 910-11 (Bankr. S.D.N.Y. 1983). Once movant makes an initial showing of "cause", the burden shifts to the debtor "for all issues other than the debtor's equity in property." *In re Balco Equities Ltd., Inc.,* 312 B.R. 734, 749 (Bktcy. S.D.N.Y. 2004) (citations omitted).

38.   Goldstein Group recognizes that without more the automatic stay, which is effective upon the filing of the petition, would render any action or proceeding described in 11 U.S.C. § 362(a)(1) void if it occurs after the automatic stay takes effective.

39.   It is, however, also clear that a Bankruptcy Court has the power to take measures, in its discretion, to annul or terminate the stay, *nunc pro tunc*, by retroactively lifting the stay to permit certain otherwise forbidden courses of action or, inappropriate circumstances, to cure stay violations *nunc pro tunc* (*see, generally, NKL Enterprises LLC v. Oyster Bay Management Company,* 2013 Westlaw 1775051).

40. It is respectfully urged that the circumstances of this case justifies the extraordinary relief requested by Goldstein Group. It is generally recognized that courts have a variety of factors to consider when *nunc pro tunc* relief is requested. *In re Stockwell*, 262 B.R. 275 (U.S.Bankr.Ct. D.VT. 2001), the Court set forth seven criteria as follows:

> "(1) if the creditor had actual or constructive knowledge of the bankruptcy filing and, therefore, of the stay; (2) if the debtor has acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation; (6) if failure to grant retroactive relief would cause unnecessary expense to the creditor; and (7) if the creditor has detrimentally changed its position on the basis of the action taken."

41. Although the *Stockwell* court noted that no single factor is controlling, each is relevant. Although it cannot be disputed that Goldstein Group was aware of the Current Filing because Celeste (not the Debtor) appeared at the Foreclosure Sale, but based on the facts and circumstances elaborated herein, it is obvious that the Debtor acted in bad faith.

42. The third party purchaser bid more than the amount owed to Goldstein Group but considering the other liens against the Property (Exhibits "P" and "Q"), it is uncertain whether there is equity in the Property available for distribution to Celestine's creditors. At the very least, however, these issues can be resolved in Celeste's Chapter 13 case pursuant to the Order of Judge Garrity, Jr. (Exhibit "H").

43. Goldstein Group submits that had it cancelled the Foreclosure Sale and a Motion for an Order terminating the stay had been made, it would have been granted. The cancellation of the sale would have caused unnecessary expense to Goldstein Group and the possible loss of the third party bidder.

44. Although it cannot be said, under the *Stockwell* factors, that Goldstein Group has detrimentally changed its position because it still retains a first lien on the Property, the facts are compelling that *nunc pro tunc* relief is warranted considering the *Stockwell* factors. The Debtor's and Celeste's actions in the repetitive filings since 2010, the last minute denials of emergency relief from the Bankruptcy Court, the State Court and the Federal Court makes it clear that the Foreclosure Sale should be finalized and the Property sold.

45. Considering the history of this Debtor and his family, the dismissal of each of the prior cases (*see* Exhibit "L"), an obvious lack of good faith by the Debtor and his family, and no true intent to reorganize his financial affairs (*see, In re Montalvo,* 416 B.R. 381 (Bankr. E.D.N.Y. 2009)), there is sufficient cause to permit this Court to annul or terminate the automatic stay to permit Goldstein Group to pursue its claim against the Property and finalize the Foreclosure Sale

46. Although it may not be necessary considering the basis for the ruling requested, an Affirmation of Michael Goldstein, the member of Goldstein Group setting forth this computation of arrears, is annexed hereto.

47. No prior application for this or similar relief has heretofore been made, except that Goldstein Group filed a Motion for Relief from the Stay in the Celeste Current Filing Chapter 13 case filed in the Southern District of New York, which was granted (Exhibit "H").

**WHEREFORE,** it is respectfully prayed that this Court enter an Order terminating the automatic stay to permit Goldstein Group to consummate its foreclosure, enter an Order providing that any future filings by this Debtor, Celestine or Sylvester not trigger the provisions of 11 U.S.C. § 362, together with such other and further relief as to the Court may seem just and proper.

Dated:   New City, New York
         September 13, 2016

                                              ELIZABETH A. HAAS, ESQ., PLLC
                                              Attorney for Creditor
                                              GOLDSTEIN GROUP HOLDING

                                              _____
                                              ELIZABETH A. HAAS, ESQ., PLLC
                                              254 So. Main Street, Suite 302
                                              New City, N.Y. 10956-3363

t:\goldstein, michael\wenegieme\celestine\app in support of motion to dismiss.doc